**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jesus Guadalupe Vasquez Ayala,<br>Movant/Defendant<br>-vs-<br>United States of America,<br>Respondent/Plaintiff. | CV-17-0284-PHX-SPL (JFM)<br>CR-15-0969-PHX-SPL<br><br>**Report & Recommendation**<br>**on Motion to Vacate, Set Aside**<br>**or Correct Sentence** |

## I.  MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on January 27, 2017 (Doc. 1).  On September 11, 2017 Respondent filed its Response (Doc. 16).  Movant filed a Reply on October 23, 2017 (Doc. 19).

The Movant's Motion is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.  FACTUAL BACKGROUND

Respondent makes the following summary of the factual background:

Defendant was born in Sinaloa on March 28, 1980, and is a citizen and national of Mexico. He entered into the United States unlawfully on October 15, 1999, and remained until December 27, 1999, when an immigration judge ordered his removal for a period of ten years. Defendant reentered into the United States and was convicted of Possession or Purchase for Sale of Designated Controlled Substances, a felony offense, in violation of California Health and Safety Code section 11351, and of Felon/Addict in Possession of a Firearm, in violation of California Penal Code

1

section 12012(A) on March 31, 2000. He was sentenced to prison for two years.

Defendant reentered unlawfully again in June 2001 and remained until December 29, 2003, when he was deported to Mexico pursuant [to] the reinstatement of his removal order. Defendant was warned not to enter or be in the United States at any time, but he reentered on June 1, 2008 and was found in Phoenix, Arizona on November 8, 2014, after being arrested and booked into the Maricopa County Jail (MCJ) for aggravated harassment. He informed immigration officials at MCJ that he was a citizen of Mexico, unlawfully present in the United States. Immigration officials confirmed his statements and lodged a detainer for him.

Defendant pleaded guilty to Aggravated Harassment, a felony and on December 18, 2014, was sentenced to the Arizona Department of Corrections (ADOC) for one year. During the booking process at ADOC, Defendant informed an immigration officer that he was a citizen and national of Mexico unlawfully present in the United States. On July 8, 2015, Defendant completed his sentence and was arrested by immigration officials for reentering and being in the United States unlawfully.

(Response, Doc. 16 at 1-2 (citations omitted).)   Movant adopts this statement of the factual background, but asserts that his 2000 drug conviction was pursuant to a "West Plea," and that he "did not admit elements of sale to any amount of Drugs or type of Drug."  (Reply, Doc. 20 at 1.)

The undersigned finds that Respondent's recitation accurately reflects the record. (*See* Exhibit A, Record of Deportation; Exhibit F, California Prosec. Records.) (Exhibits to the Response, Doc. 16, are referenced herein as "Exhibit ___.")

## B.  PROCEEDINGS AT TRIAL

Movant was charged with Reentry of Removed Alien, in violation of 8 U.S.C. § 1326(a), with a sentencing enhancement pursuant to 8 U.S.C. § 1326(b)(1). (CR Doc. 1.) (Docket entries in the underlying criminal case, *United States v. Jesus Guadalupe Vasquez Ayala*, CR-15-0969-PHX-SPL, are referenced herein as "CR Doc. ___.")

Criminal Justice Act attorney Baltazar was appointed to represent Movant, and on August 6, 2015, Movant entered into a "Fast Track 5K3.1" plea agreement.  (CR Doc. 26.)

Under the terms of Plea Agreement, Movant agreed to plead guilty to the charge of illegal re-entry in violation of 8 U.S.C. § 1326(a) and 1326(b)(1) or (b)(2).   (*Id.* at 1.)

In addition, he agreed to reinstatement of removal proceedings. (*Id.* at 5.)

Agreements regarding sentencing included: (a) a two or three level reduction in offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1; (b) a Base Offense level of 8, plus an adjustment for his most serious prior conviction pursuant to U.S.S.G. § 2L1.2(a) and (b); (c) a two or four level departure under the Attorney General's Early Disposition Program, dependent upon the nature of Movant's criminal history, provided that a four level departure would prohibit other variances, adjustments, departures or reductions; and (d) if no enhancement applied under § 1326(b)(1) or (b)(2), the sentence would not exceed three to twelve months and a day, dependent upon the applicable criminal history category. (CR Doc. 26 at 3-4.)

Movant agreed to the following statement of factual basis:

**FACTUAL BASIS**

I further admit the following facts are true and if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt: I am not a citizen or national of the United States. I was removed from the United States through Nogales, Arizona, on December 29, 2003. I was voluntarily present and found in the United States at or near Phoenix, Arizona, on November 9, 2014. I did not obtain the express consent of the United States government to reapply for admission to the United States prior to returning to the United States.

For sentencing purposes, I admit I was convicted of Possession or Purchase for Sale of Designated Controlled Substances, a felony, on March 31 2000, in the Superior Court of California, San Juaquin County. I was represented by an attorney, and I was sentenced to two (2) years imprisonment.

(*Id.* at 8.)

The Plea Agreement included a broad waiver of appellate and collateral attack rights, excluding only "an otherwise-preserved claim of ineffective assistance of counsel or of 'prosecutorial misconduct' (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015))."[1] (CR Doc. 26 at 4-5.)

---

[1]    Respondent does not rely on this Waiver, except as a basis for arguing effective assistance with regard to the appeal. (Response, Doc. 16 at 15.) Respondent recites the law of waiver by entry of guilty plea (*id.* at 7), but does not explicitly argue it as a basis for disposing of claims, but simply restricts its argument to unwaived claims of ineffective assistance.

On August 6, 2015, Movant appeared with counsel and entered his guilty plea pursuant to the plea agreement, and the plea was found to have been knowingly, intelligently, and voluntarily entered. (Exhibit D, R.T. 8/6/15.)

On November 2, 2015, Movant appeared for sentencing and was sentenced to 46 months in prison. (Exhibit E, R.T. 11/2/15.) The court found a base offense level 8, under U.S.S.G. § 2L1.2(a), but applied a 16 level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i). After applying a three level reduction for acceptance of responsibility, the court relied on a total offense level 21. (Exhibit E, R.T. 11/2/15 at 3.) The Statement of Reasons reflected that the court adopted the Presentence Investigation Report without change, and made a finding of an Offense Level 21, Criminal History Category IV, a Guidelines range of 57 to 71 months, and applied a downward departure pursuant to U.S.S.G. § 5K3.1 (Early Disposition Program) as provided in the Plea Agreement. (CR Doc. 25.)

## C. PROCEEDINGS ON DIRECT APPEAL

On November 9, 2015, Movant filed a *pro se* Notice of Appeal (CR Doc. 27), and appellate counsel was appointed (CR Docs. 29, 30). Eventually, appellate counsel filed a motion for voluntary dismissal, which was granted on April 18, 2016. (CR Doc. 37.)

## D. PRESENT FEDERAL HABEAS PROCEEDINGS

**Motion** – Movant commenced the current case by filing his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 January 27, 2017 (Doc. 1). Movant's Motion asserts the following four grounds for relief:

> (1) "Whether the judicial noticeable documents do not support the drug-trafficking sentence enhancement under USSG §2L1.2";
> (2) "Whether Defense counsel was ineffective assistance of counsel when he failed to file a notice of appeal when asked to please do so by petitioner";
> (3) "Whether the validity of deportation order was valid under 8 U.S.C. 1326(D)"; and
> (4) "Whether the plea was knowingly, intelligently, voluntarily entered."

(Order 3/7/17, Doc. 3 at 1-2.)

On May 11, 2017, Movant filed a Waiver (Doc. 7), waiving his attorney-client privilege as to the contested issues. A protective Order regarding information obtained under the waiver was entered on May 16, 2017 (Doc. 8).

**Response** – On September 11, 2017, Respondent filed a Motion to Take Judicial Notice (Doc. 15), asking the Court to take judicial notice of various records from the Superior Court of California. Movant did not respond, and the Court granted the motion, and took judicial notice of the documents appended to the Motion. (Order 10/3/17, Doc. 18.)

On September 11, 2017, Respondent filed its Response (Doc. 16). Respondent argues that Movant's plea was knowingly and voluntarily entered. Respondent argues that counsel was not ineffective in advising Movant because any challenges to the prior conviction or prior deportation would have been futile, and in light of Movant's waiver of appellate rights, counsel was not ineffective in failing to pursue a notice of appeal.[2]

Respondent provides a Declaration of trial counsel (Exhibit C). Trial counsel relates: his extensive criminal defense experience (¶ 1), his representation of Movant and withdrawal on November 19, 2015 after learning of Movant's *pro se* notice of appeal (¶¶ 2-3), the facts of Movant's offense, prosecution and criminal history (¶6), his advice to Movant on the plea agreement (¶ 7), his investigation and advice to Movant on the sentencing enhancement and charges (¶¶ 8-9), his communication in Spanish with Movant on the Plea Agreement (¶ 10), his evaluation of the California conviction as a basis for the sentencing enhancement (¶ 11), and his denial of being asked to file a notice

---

[2] Respondent argues in a footnote that even if meritorious, any claims other than ineffective assistance of counsel are procedurally defaulted. (Response, Doc. 16 at 6, n. 4.) For the following reasons, this defense is not addressed: (1) the undersigned is not inclined to address defenses raised in a footnote; (2) Respondent appears to only be clarifying that no waiver of the defense is being made; (3) Movant's claims all include an assertion of ineffective assistance, and thus the underlying claim effectively must be addressed on the merits; and (4) Movant has asserted cause to excuse his default in the nature of arguments that counsel improperly counseled Movant to consent to withdraw his direct appeal.

of appeal and his withdrawal after Movant's *pro se* notice (¶ 12).

**Reply** - On October 23, 2017 Movant filed a Reply "and Motion for Default Judgment or Summary Judgment" (Doc. 20).  The Court construed the filing as a request for entry of default which was denied as unsupported.  The request for summary judgment was stricken as improperly filed under Federal Rule of Civil Procedure 56. (Order 10/26/17, Doc. 21.)

In his Reply, Movant argues that he was misled into withdrawing his appeal, that his California conviction did not qualify as a crime of violence because 18 U.S.C. § 16(b) is unconstitutionally vague (citing *Dimaya v. Lynch*, 803 F.3d 1110 99th Cir. 2015, *cert. granted,* 2016 WL 3232911 (9/29/16)), and that Movant did not meet with trial counsel at the Federal Correctional Institute to sign an Affidavit approving the motion to withdraw his appeal.  Movant further argues the merits of his claims.

## III.  APPLICATION OF LAW TO FACTS
### A.  GROUND 1 – SENTENCING ERROR
### 1.  Factual Background

At sentencing, Movant was subjected to a 16 offense level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i).  At the time, § 2L1.2 provided:

> (a) Base Offense Level: 8
> (b) Specific Offense Characteristic
>     (1) Apply the Greatest:
> If the defendant previously was deported, or unlawfully remained in the United States, after--
>         (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points;
>         (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels if the conviction receives criminal history points under Chapter Four or by 8 levels if the conviction does not receive criminal history points;
>         (C) a conviction for an aggravated felony, increase by 8 levels;

> (D) a conviction for any other felony, increase by 4 levels; or
>
> (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

U.S.S.G. § 2L1.2 (eff. 11/1/15).  *See* U.S.S.G. § 1B1.11 ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.")  This was based on the following findings:

> This Court's also enhancing by 16 levels based on the defendant being removed to his home country of Mexico back in December of 2003 after being convicted of a felony in March of 2000 for the possession for sale of a controlled substance.  And in that case it was cocaine, and it was in violation of California state law. And the defendant was sentenced to two years of State prison. And this Court finds that the conviction is categorically a drug trafficking offense that's subjected to a 16-level enhancement, and that the offense is an aggravated felony. So pursuant to Sentencing Guideline Section 2L1.2(b)(1)(A)(i) the 16 levels will be added.

(Exhibit E, R.T. 11/2/15 at 3.)

Thus, Petitioner's sentence was based on a determination that his 2003 conviction was for a "drug trafficking offense," within in the meaning of subsection (A)(i). Although the court referenced the offense being "an aggravated felony," its status as such was only relevant if the court was relying on subsection (C).  Because subsection (A)(i) provided a greater enhancement than subsection (C), only (A)(i) is relevant.

## 2. Parties Arguments

**Motion** - Liberally, construed, in Ground 1, Movant argues that trial counsel was ineffective for failing to investigate and argue objections that his sentence was improperly enhanced under U.S.S.G. § 2L1.2 because the documents relied upon do not establish that his California conviction under California Health and Safety Code § 11351 qualified as a "drug trafficking offense." (Motion, Doc. 1 at "5", "14.")  In particular, he argues that California's possession for sale statute applies to sales involving remuneration other than money or valuables, and California has a more expansive lists of substances defined as narcotics.   He further argues that the judicially noticeable documents (under the modified categorical approach) do not establish that Movant

7

received money in exchange for the drugs, and that sufficient records of the California conviction were not presented to the trial court.

In making his arguments, Movant relies upon decisions in *Mathis v. United States*, 136 S.Ct. 2243 (2016) (statute with overbroad alternative means of satisfying single element not divisible), *Descamps v. United States*, 133 S.Ct. 2276 (2013) (overbroad statute with indivisible elements not subject to modified categorical approach), and *Taylor v. United States*, 495 U.S. 575 (1990) (modified categorical approach can be used for overbroad statutes if divisible).[3]

**Response** – Respondent argues that the claim is without merit because: (1) although § 11351 is categorically broader than the Guideline definition of a drug trafficking offense, under the modified categorical approach there was reasonable certainty that Movant was convicted of possession or purchase for sale of cocaine under § 11351, which is a drug trafficking offense.  Moreover, Movant had reviewed the prior with trial counsel and proffered no basis on which application of the Guideline could be avoided, and still has not done so.  Accordingly, further research was not required, the sentence was proper, and any objection would have been futile.  (Response, Doc. 16 at 10-13.)

**Reply** – In his Reply, Movant argues that his conviction would not qualify under the modified categorical approach because documentation from the California plea colloquy and sentencing proceedings would show that Movant "did not admit to the type of controlled substance or to any elements or factual allegations to sale or possession."

He further argues that § 11351 did not qualify as an "aggravated felony" under

---

[3]  Movant also complains that there was an "amended" charge flowing from plea negotiations. (Motion, Doc. 1 at 18……)  The source of this assertion is not clear.  None of the state court documents reference an amendment to the charges in Count 1 other than that the separate allegation that the offenses were committed while armed with a firearm. (Exhibit F, Complaint at 3.)  That allegation was stricken. (*Id.* at Sentencing Minutes ("Alleg. #1 alleged in Ct #1…Stricken").)  The only reference to an amended charge related to Movant's Arizona conviction for possession of marijuana, reflected in his deportation file. (Exhibit A, at Arizona Sentence 4/11/03.)  That conviction was not used to enhance his sentence.

*Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015).

### 3. Applicable Law

#### a. Modified Categorical Approach

The Sentencing Guidelines define "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 Application Note 1(B)(iv).

> To determine whether [a] conviction is a "drug trafficking offense," we apply a three-step process. First, "we compare the elements of the state offense to the elements of the generic offense defined by federal law." If "the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as [a drug trafficking offense]." Second, if the statute "criminalizes conduct that goes beyond the elements of the federal offense,"—that is to say, if the statute is "overbroad"—then we must determine whether the statute is "divisible or indivisible." "If the statute is indivisible, 'our inquiry ends, because a conviction under an indivisible, overbroad statute can never serve as a predicate offense.' " Third, if the statute is both overbroad and divisible, we apply the "modified categorical approach." "At this step, we may examine certain documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating."

*United States v. Rosales-Aguilar*, 818 F.3d 965, 972–73 (9th Cir. 2016) (citations omitted).

In applying the "modified categorical approach", the court "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). For example, in *United States v. Torre-Jimenez*, 771 F.3d 1163, 1167 (9th Cir. 2014), the court properly relied on "a criminal complaint, an abstract of judgment, and a docket sheet."

**b.   Ineffective Assistance of Counsel**

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).   In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.   Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).   The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense."   *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).   The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

"The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations

omitted).

Moreover, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

In the context of a plea agreement, the defendant must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 58-59; *Strickland v. Washington*, 466 U.S. at 694; *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990). The defendant must show "that but for counsel's errors, he would either have gone to trial or received a better plea bargain." *U.S. v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004).

The court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible. *See United States v. Keller*, 902 F.2d 1391, 1394-95 (9th Cir. 1990) (petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision).

**4. Application of Law**

### a.   California Conviction Qualified

Here, Movant's 2003 conviction was for a violation of California Health and Safety Code § 11351. The Sentencing Minutes further reflect that Movant pled "Guilty to Count 1, 4," and the identified charges included "11351 H.S." (Exhibit F at Sentencing Minutes.)   Similarly, the Prison Commitment reflects Petitioner was convicted of "11351 H.S." and on Count 1. (*Id.* at Prison Commitment.) The Minute Entry of "04/03/00" reflected a plea to and conviction on Count 1 of the Complaint. (*Id.*

11

at Minute Entry.) Count 1 of the Complaint alleged:

> COUNT: 001. On or about 03/16/00 the crime of POSSESSION FOR SALE OF A CONTROLLED SUBSTANCE, in violation of Section 11351 of the Health and Safety Code, a FELONY, was committed by JOSE SONICO, AND ALFREDO AYALA-GOMEZ, how at the time and place last aforesaid, did willfully and unlawfully possess for sale a controlled substance, to wit COCAINE.

(Exhibit F, Complaint at 1.)

Thus it is clear that Movant was convicted of violating § 11351. Movant does not contend otherwise. At the time of Movant's offense in that case, the statute provided:

> Except as otherwise provided in this division, every person who possesses for sale or purchases for purposes of sale (1) any controlled substance specified in subdivision (b), (c), or (e) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, shall be punished by imprisonment in the state prison for two, three, or four years.

Calif. Health and Safety Code §11351 (eff. Mar. 29, 2000).

**Sale** – Movant complains that the California statute does not require a "sale," citing *Roman-Suaste v. Holder*, 766 F.3d 1035 (9th Cir. 2014) and *Moncrieffe v. Holder*, 569 U.S. 184 (2013). In *Moncrieffe*, the Court addressed the exception under the Federal Controlled Substances Act (CSA) for the distribution of small quantities of marijuana without remuneration, as applied to aggravated felonies under the Immigration and Nationality Act (INA). The INA treats a drug offense as an aggravated felony only if it is "punishable as a felony" under the CSA. But the CSA provides that the distribution of a "small amount of marihuana for no remuneration" is not punishable as a felony. Accordingly, a state offense for distribution of a small amount of marihuana that did not require remuneration would not categorically qualify as a violation of the CSA.

Similarly, in *Roman-Suaste*, the defendant challenged the characterization of a prior conviction as an aggravated felony for purposes of the INA, where the conviction was a California conviction for possession for sale of marihuana.

But here, Movant's California conviction was not for possession of marihuana,

12

but for cocaine.  The CSA makes no exception for distributions of cocaine without remuneration.  Accordingly, neither *Moncrieffe* nor *Roman-Suaste* are controlling, and the absence of remuneration is irrelevant.

**Type of Remuneration** - Movant argues that this statute is overbroad because it applies to transactions for remuneration other than money or valuables.  Movant cites no authority for the proposition that the type of remuneration required for an offense to qualify as a drug trafficking offense is limited to "money" or other "valuables."  The Guidelines' definition makes no such specification.  Indeed, the Guidelines definition of "drug trafficking offense" extends not only to sales, but to a variety of other drug related acts which do not involve any remuneration, *i.e.* "manufacture, import, export, distribution, or dispensing."  U.S.S.G. § 2L1.2 Application Note 1(B)(iv).[4]

**Qualifying Controlled Substance** - Movant properly argues that §11351 is overbroad with regard to the prohibited controlled substances.  In *U.S. v. Torre-Jimenez*, 771 F.3d 1163 (9th Cir. 2014), the court observed that ""[s]ection 11351 is categorically broader than the Guidelines definition of 'drug trafficking offense' because it criminalizes possession or purchase of certain substances that are not covered by the CSA [Federal Controlled Substances Act]."  771 F.3d at 1165 (quoting *United States Leal-Vega*, 680 F.3d 1160, 1167 (9th Circ. 2012)).

The court also concluded, however, that the statute "is divisible within the meaning of *Descamps*."  *Id.* at 1166.  The court went on to conclude that the judicially noticeable documents (the complaint, abstract of judgment, and docket sheet) that the defendant's § 11351 conviction "related to the specific controlled substance of cocaine."

---

[4] Perhaps Movant intends to reference that the California statute extends to "purchases for purposes of sale," while the Guidelines definition is limited to "manufacture, import, export, distribution, or dispensing of, or offer to sell" or "possession with intent to manufacture, import, export, distribute, or dispense." (*Id.*)  Arguably one could "purchase" without manufacturing, importing, exporting, distributing, dispensing or offering, or even without possessing (e.g. where the drugs were never delivered).  But here, it is plain in the judicially noticeable documents that Movant's conviction was for "possession," not mere purchase, and that the possession was coupled with an intent to distribute (e.g. sell) the drugs.

*Id.* at 1168.

Thus, the question here is whether the judicially noticeable documents reflect that the offense to which Movant pled guilty related to a substance covered by the Federal Controlled Substances Act.   Respondent has provided a copy of the Complaint, Sentencing Minutes, Prison Commitment, and Minute Entry of April 3, 2000.  Movant raises no objection to the authenticity of these records.  The latter three plainly reflect conviction of Count 1, and the Complaint plainly reflects that Count 1 was based on allegations regarding "COCAINE."   (Exhibit F, Complaint at 1.)   Movant makes no argument that cocaine is not covered by the Federal Controlled Substances Act.

Movant argues that *Mathis* alters the analysis.   In *Mathis*, the Supreme Court addressed the application of the categorical and modified categorical approach to a variant of overbroad statutes which do not specify alternative elements disjunctively (e.g. burglary stemming from either "lawful entry" or "unlawful entry", with varying punishments), but a single element which can be met by various facts (e.g. use of a deadly weapon defined as use of a "knife, gun, bat, or similar weapon") where not all such facts meet the required federal definition.  *Mathis*, 136 S.Ct. at 2249.  The Court concluded that attempting to apply the modified categorical approach in the latter scenario removed the focus from elements to specific facts, and thus could not justify application to an overbroad statute.  *Id.* Accordingly, the latter type of offense is deemed not divisible.  *See United States v. Martinez-Lopez*, 864 F.3d 1034, 1038–39 (9th Cir.), *cert. denied*, 138 S. Ct. 523 (2017) ("In *Mathis*, the Supreme Court reiterated the importance of the abstract comparison of elements, explaining that a statute is divisible only when it 'list[s] elements in the alternative, and thereby define [s] multiple crimes.'").

On its face, it is arguable that § 11351 creates indivisible offenses (possession or purchase), committable with regard to a laundry list controlled substances. However, "[i]n light of how it is interpreted by California courts," the Ninth Circuit has held "that section 11351…is divisible as to its controlled substance requirement." *United States v.*

*Murillo-Alvarado*, 876 F.3d 1022, 1027 (9th Cir. 2017) (finding qualifying offense under § 11351 where judicially noticeable records indicated conviction related to cocaine).

Accordingly, Movant's argument under *Mathis* is without merit, and there was no basis for counsel to object to reliance on this California conviction based on the controlled substance.

**Quantity of Cocaine** - Movant complains that the records do not reflect the amount of cocaine. (Motion, Doc. 1 at 18; Reply, Doc. 20 at 5.)  However, Movant proffers nothing to explain why the amount possessed was relevant.  The Sentencing Guidelines definition of "drug trafficking offense" does not specify quantities.  U.S.S.G. § 2L1.2 Application Note 1(B)(iv).  Although penalties vary based on specific drug quantities, "the federal Controlled Substances Act does not contain an exception for a conviction involving a small quantity of cocaine."  *Avila v. Attorney Gen.*, 826 F.3d 662, 668 n. 3 (3d Cir. 2016).  *Compare* 21 U.S.C. § 841(a)(1) ("to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance") with 21 U.S.C. § 841(b)(1)(A) (5 kilograms cocaine or 280 grams with cocaine base, minimum 10 years), § 841(b)(1)(B) (500 grams cocaine or 28 grams with cocaine base, minimum 5 years), § 841(b)(1)(C) (any amount of Schedule II drugs, no minimum, but maximum of 20 years)  and 21 U.S.C. § 812 (identifying cocaine as a "Schedule II" drug).

To the extent that Movant relies on the decisions in *Moncrieffe* and *Roman-Souzas*, those opinions are not controlling because they dealt with a unique exception under the Federal Controlled Substances Act for small quantities of *marihuana*.  That exception has no application to Movant's cocaine related conviction.

**Admission of Specific Elements** – With regard to the state court records, Movant further complains that Respondent is "not showing the Plea Colloquy or Sentencing Transcript which they will show that Defendant never admitted the type of Controoled [sic] Substance or any element of the factual allegations." (Reply, Doc. 20 at 5.)  But Movant offers no authority for the proposition that he must have admitted specific

factual allegations beyond his guilty plea to the charge of the Complaint.[5]

Assuming *arguendo* that the transcripts would show no explicit admission to specific elements of the offenses or, in particular the type of controlled substance, that would not preclude a finding of a qualifying offense.  In *United States v. Cabrera-Perez,* 751 F.3d 1000 (9th Cir. 2014) the defendant argued that the plea agreement did not state which of the elements he agreed to plead guilty. The court nonetheless found the record sufficient because the qualifying offense was laid out in the counts of the complaint which the plea agreement referenced.  *Id.* at 1006.  "[B]ecause the complaint is a charging document that narrows the charge to generic limits,' the fact that [the defendant] pleaded guilty to these charges establishes that he was convicted of the generic offense." *Id.* (internal quotations and citations omitted).

More particularly, the Ninth Circuit has cautioned against looking to such transcripts in applying a modified categorical approach.  While "[s]entencing courts may review the plea colloquy or other 'comparable judicial record,'" in applying the modified categorical approach, "[w]hen a defendant pleads guilty to a crime, 'he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment.'" *United States v. Marcia-Acosta*, 780 F.3d 1244, 1251 (9th Cir. 2015) (citations omitted).

Thus, the evidence of Movant's plea to Count 1 of the Complaint was sufficient to

---

[5] Absent certain special circumstances such as a guilty plea in face of assertions of innocence, the Constitution does not require state judges to find a factual basis for a guilty plea. *See Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012).  Movant argues that his plea was a "West" or "Alford" plea, presumably referencing such a plea of guilty though innocent. (Motion, Doc. 1 at 15.)  But Movant is not free to collaterally attack the California conviction in this § 2255 proceeding, only its qualification as a basis for enhancement of Movant's sentence under the Guidelines. (*See infra* Section III(C)(3).)  Moreover, the judicially noticeable records reflect that a factual basis was found. (Exhibit F, Minute Entry 03/31/00 ("Court finds a factual basis for the plea based on recited by counsel for people").)  For the same reason, this Court need not resolve Movant's assertions that his guilty plea in the California prosecution was not knowing and voluntary, *e.g.* because he did not know it amounted to a drug trafficking offense, or involved some amendment to the charges negotiated in the California court, etc.  (*See* Motion, Doc. 1 at 16-17.)

establish for purposes of U.S.S.G. § 2L1.2 that he had been convicted of a drug trafficking offense.

Movant goes to lengths to argue that his plea does not establish the offense because it was a "West Plea." Presumably, Movant references California pleas pursuant to *People v. West*, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970). That case concerned the validity and voluntariness of a plea of "nolo contendere" (or no contest) made in exchange for a promise of non-prosecution on other charges. *Id.* at 600, 477 P.3d at 410. But Movant proffers nothing to show that he pled no contest. The judicially noticeable records reflect that he instead pled guilty. (*See* Exhibit F, Sentencing Minutes (reflecting "Defendant entered a plea of…D. Guilty to Count 1,4"), Minute Entry 04/03/00 ("Defendant entered a plea of guilty to Count 1").)

Even if Movant pled nolo contendere, under California law, a plea of nolo contendere "'is the functional equivalent of a guilty plea.'" *United States v. Anderson*, 625 F.3d 1219, 1220 (9th Cir.2010) (quoting *People v. Whitfield*, 46 Cal.App.4th 947, 54 Cal.Rptr.2d 370, 377 (Cal.Ct.App.1996)).

"Moreover, the applicable definition of "conviction," for purposes of implementing the sentencing guidelines in the immigration context, is to be found in federal law, not state law." *United States v. Mendez-Sosa*, 782 F.3d 1061, 1063 (9th Cir. 2015) (applying U.S.S.G. § 4A1.2 to U.S.S.G. § 2L1.2). Section 2L1.2 does not define a conviction. But § 4A1.2(a) provides " 'Convicted of an offense,' for the purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere." That definition applies to § 2L1.2(b), such that a judgment based on a nolo contendere plea counts as a conviction. *United States v. Cuevas*, 75 F.3d 778, 782 (1st Cir. 1996). *Cf. United States v. Anderson*, 328 F.3d 1326, 1328 (11th Cir. 2003) (relying on 8 U.S.C. § 1101(a)(48)(A) to find § 2L1.2(b) is satisfied by a nolo contendere plea).

Further, the application of the categorical and modified categorical approach is not altered by the fact that Movant's state conviction may have been based on a nolo

17

contendere plea. "Whether or not a defendant maintains his innocence, the legal implications of a guilty plea are the same in the context of the modified categorical approach under *Taylor*. The question under the sentencing guidelines is whether a defendant has 'a conviction for a ... crime of violence,' not whether the defendant has admitted to being guilty of such a crime." *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1197 (9th Cir. 2006).

***Dimaya* Inapposite** – In his Reply, Movant argues that § 11351 did not qualify as an "aggravated felony" under *Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015), *cert. granted*, 137 S.Ct. 31 (2016). (Reply, Doc. 20 at 4.)   *Dimaya* addressed the unconstitutional vagueness of the definition of a violent felony as an "aggravated felony" under 18 U.S.C. § 16(b). Here, although Movant's California conviction was found by the court at sentencing to be an "aggravated felony," Movant was not convicted under §16(b), nor was sentencing enhancement based on a finding of a violent felony, but rather on a drug offense. *Dimaya* is simply inapplicable to this case.

### b.   Counsel Not Ineffective

Based on the foregoing, Movant has failed to show that counsel was ineffective in failing to investigate, advise, or argue that his California conviction did not qualify as a drug trafficking offense under U.S.S.G. § 2L1.2(b).

It is true the law regarding the categorical and modified categorical approach has been in flux. It might be tempting to try to pick a moment in time and assert that under the then existent state of the law counsel could have had a basis to argue that a different conclusion should have been reached.

To the extent that controlling law has become more favorable, Movant generally may not rely on such changed circumstances because counsel's performance is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). While the same might not be true if Movant could show that reasonable counsel would nonetheless have

argued for a change in the law, Movant proffers nothing to suggest that any of the changes should have been anticipated.

To the extent that controlling law has become less favorable, Movant may not attempt to reap a windfall by asserting that counsel should have raised an argument then viable even though it has since been determined incorrect. A different outcome that would have resulted from acceptance of an incorrect legal analysis cannot be said to have resulted in fundamental unfairness and cannot constitute "prejudice" under the *Strickland* standard. *Williams v. Taylor*, 529 U.S. 362, 391-392 (2000).

Moreover, to the extent that Movant would simply argue that counsel failed to adequately investigate, Movant has the burden of showing what more investigation would have revealed that would have beneficial to his case. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Movant has shown no records (including his speculation on the state court transcripts) that would have precluded application of the § 2L1.2(b) enhancement.

### 5. Conclusion

Movant's sentence was properly enhanced under U.S.S.G. § 2L1.2(b), and Movant has not shown that counsel was ineffective with regard to application of the Guideline, or any investigation with regard to such application. Accordingly, Ground 1 is without merit and should be denied.

### B. GROUND 2 – NOTICE OF APPEAL
### 1. Parties Arguments

**Motion** - In his Ground 2, Movant alleges that trial counsel was ineffective when he failed to file a notice of appeal when asked to do so by Movant. Movant alleges he asked counsel to file a notice of appeal immediately after sentencing, but counsel did not do so, and Movant filed a *pro se* notice. Movant then complains that appellate counsel was ineffective when he wrongly advised Movant that his claims could be raised in a § 2255 proceeding. Movant alleges he was encouraged by his prison "Unit Counselor" to

sign the agreement to dismiss, leading Movant to agree to dismiss his appeal.[6] (Motion, Doc. 1 at 5, "24"-"26".)

**Response** - Respondent argues that Movant knowingly waived his appellate rights as part of his plea agreement, and Movant fails to show any valid basis for appeal. (Response, Doc. 16 at 14-15.)

**Reply** - Movant argues that Respondent fails to address his claim regarding the dismissal of his appeal. (Reply, Doc. 20 at 2.) He argues trial counsel should have preserved his claim regarding the sentencing enhancement for appeal, and was ineffective for failing to file a notice of appeal. He denies having met with counsel at the Federal Correctional Institute.

## 2. Applicable Law

**Trial Counsel** - In the normal course, a defendant making a claim of ineffective assistance of trial counsel in failing to file a requested notice of appeal need not establish meritorious claims to establish prejudice so as to be entitled to "be resentenced so that he may perfect an appeal in the manner prescribed by the applicable rules." *Rodriquez v. United States*, 395 U.S. 327, 332 (1969). That clarification of the prejudice requirement was adopted in recognition of the *pro se* status of most post-conviction relief petitioners, who "would thus be deprived of their only chance to take an appeal even though they have never had the assistance of counsel in preparing one." *Id.* at 330.

However, the prescribed resentencing is not an entitlement to reopen disputes over the appropriate sentence, but a way to perfect what would otherwise be a jurisdictionally defective, untimely appeal. *United States v. Gaither*, 245 F.3d 1064, 1070 (9th Cir. 2001). *See also United States v. Sandoval-Lopez,* 409 F.3d 1193, 1198 (9th Cir. 2005) ("the district court can vacate and reenter the judgment … and allow the

---

[6] The undersigned does not understand Movant to assert a claim that the actions of the prison employee form the basis of a separate claim for relief, but as part of his explanation why he followed appellate counsel's advice to dismiss the appeal.

appeal to proceed").

However, "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).

**Appellate Counsel** – To maintain a claim of ineffective assistance of appellate counsel, a defendant "must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal." *Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014).

### 3. Application of Law

**Trial Counsel** - There is a factual dispute as to whether Movant instructed counsel to file a notice of appeal. Accordingly, the undersigned assumes *arguendo* that such instruction was given. Under that assumption, counsel's failure to file a notice of appeal was deficient performance.

However, "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *Flores-Ortega*, 528 U.S. at 484. Movant cannot establish that trial counsel's failure to file a notice of appeal resulted in the forfeiture of the appeal because Movant file a timely *pro se* notice of appeal, and thus secured a direct appeal. The ultimate dismissal of that appeal was not the result of any failing by trial counsel, but was the result of advice from appellate counsel (or, according to Movant, his prison unit counselor).

Accordingly, Movant has failed to show ineffective assistance of trial counsel with respect to his appeal.

**Appellate Counsel** – With regard to appellate counsel, Movant must show that appellate counsel was ineffective for failing to advise Movant to dismiss the appeal, and

21

that but for that advice, Movant would have prevailed on appeal.

The undersigned can find neither deficient performance nor prejudice.

Deficient Performance - Movant had executed a broad waiver of his appellate rights which excluded only "an otherwise-preserved claim of ineffective assistance of counsel or of 'prosecutorial misconduct' (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015))." [7]  (CR Doc. 26 at 4-5.)   But Movant has not shown a meritorious claim of ineffective assistance of trial counsel, nor asserted a claim of prosecutorial misconduct.

Further, claims of ineffective assistance of counsel are generally properly brought in a § 2255 motion rather than on direct appeal.  *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

Appellate counsel could have also asserted a claim that the waiver was not knowingly and voluntarily entered. *United States v. Michlin*, 34 F.3d 896, 898 (9th Cir.1994).  But Movant fails to show a viable basis for a claim that his waiver was not knowing and voluntary.

Additionally, there are some claims which may not properly be waived.  For example, a plea agreement cannot bar defendants from asserting "claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir.1996).  But Movant has not shown that any of the foregoing limitations apply.  Although Movant argues that his sentence was erroneous, he does not argue it was in excess of the statutory maximum (as opposed to being in excess of the Guidelines recommendation). *See United States v. Bolinger,* 940 F.2d 478, 480 (9th Cir. 1991) (waiver can extend to sentence resulting from incorrect application of guidelines).   Even so, as discussed hereinabove, Movant fails to show that his sentence was improperly enhanced under the Guidelines.

---

[7]    Respondent does not rely on the waiver, except as a basis for arguing effective assistance with regard to the appeal. (Response, Doc. 16 at 15.)

Finally, there was at least some risk that if Movant persisted in his appeal the Government could assert that the appeal amounted to a breach of the plea agreement's waiver provision, and seek to be relieved of its obligations in the agreement and even obtaining remand for resentencing under the guilty plea without the substantial benefits of the plea agreement. *See United States v. Erwin,* 765 F.3d 219, 231 (3d Cir. 2014) (remanding for resentencing without concessions based on breach of waiver agreement). *But see* Holly P. Pratesi*, Waive Goodbye to Appellate Review of Plea Bargaining Specific Performance of Appellate Waiver Provisions Should Be Limited to Extraordinary Circumstances,* 81 Brook. L. Rev. 1237, 1273 (2016) (arguing remedy should be limited to a "return to the status quo ante," not simply removal of defendant's benefits of plea agreement).

Under these circumstances, appellate counsel could have reasonable concluded that dismissing the appeal was in Movant's best interest.

Prejudice – Even if appellate counsel was deficient in advising Movant to dismiss his direct appeal, Movant fails to show "a reasonable probability exists that he would have prevailed on appeal." *Hurles*, 752 F.3d at 785. As discussed herein, the substantive claims Movant now presents are without merit, and his claims of ineffective assistance of counsel are properly brought in a § 2255 proceeding.

**4. Conclusion**

Any deficiency by trial counsel in failing to file a notice of appeal did not prejudice Movant because he filed a timely *pro se* notice of appeal. Movant has shown neither deficient performance nor prejudice with regard to appellate counsel's advice to dismiss the appeal. Accordingly, Ground 2 is without merit and should be denied.

**C. GROUND 3 – DEPORTATION ORDER**
**1. Factual Background**

Movant's conviction was based upon his removal in December, 2003. (CR Doc. 36, Plea Agreement at 8.)

23

Movant was ordered removed and was removed in 1999. (Exhibit A at Order, 12/27/99, and Warrant of Removal/Deportation 12/27/99.)

After his 2000 California drug trafficking conviction (which is the subject of Ground 1), a Notice of Intent/Decision to Reinstate Prior Order was issued to Movant on July 29, 2003. (Exhibit A)  Movant was again deported to Mexico on December 29, 2003. (Exhibit A, Warrant of Removal/Deportation 12/29/03).

Movant again reentered the United States, and in 2014 was convicted in the Maricopa County, Arizona, Superior Court on charges of "Aggravated Harrassment." (Exhibit A, Sentence 12/18/14.)

The instant criminal prosecution was then instituted.

## 2.  Parties Arguments

**Motion** - In Ground 3, Movant argues that he has not received the 2003 reinstatement of his 1999 deportation order, and his 1999 deportation order was invalid because the immigration judge failed to advise Movant of his appellate and immigration counsel rights, depriving him of judicial review. Movant alleges that in the state conviction relied upon to deport him (the California conviction in 2000 ("SF076832")), he was not advised by trial counsel of the immigration consequences of his plea.  Trial counsel in the instant case asserted that he could not challenge the validity of the state conviction. (Motion, Doc. 1 at "8".)

**Response** - Respondent argues that Movant signed the reinstatement order, admitted (as part of his plea) his removal and reentry, and fails to show the limited circumstances which would have provided a valid basis for trial counsel in this case to challenge his deportation.

**Reply** - Movant argues in his Reply that *Dimaya* and *Mathis* established a basis to challenge his deportation order both as to his California drug trafficking offense, and because "harassing and following" are not divisible offenses, an apparent reference to

Movant's 2014 Arizona conviction for "Aggravated Harassment."[8]

### 3. Applicable Law

**Collateral Attack on Deportation Order** - Movant was prosecuted under 8 U.S.C. § 1326. Subsection (d) of that provision allows a limited collateral attack in such a prosecution on the underlying deportation order:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that--
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair

8 U.S.C. § 1326(d). All three of the conditions must be met to justify the collateral attack.

"The entry of a removal order is 'fundamentally unfair' for purposes of § 1326(d)(3) only if the removal proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1018 (9th Cir. 2011). Showing prejudice does not require the defendant "to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004).

**Collateral Attack on Prior Conviction** - A defendant may not collaterally attack the validity of a prior conviction being used to enhance his sentence, whether under a statutory provision or the Sentencing Guidelines, unless based on a denial of counsel under *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See Custis v. United States*, 511 U.S. 485, 490-97 (1994) (prior conviction used as enhancement under ACCA); *United States*

---

[8] Ariz. Rev. Stat. § 13-2921 defines harassment to include six different types of harassing conduct, including communicating or acting in a harassing way, following the person, surveilling, making false reports, or interfering with utilities.

25

*v. Gutierrez-Cervantez*, 132 F.3d 460, 462 (9th Cir.1997) (§ 1326 sentencing proceeding); *Daniels v. United States*, 532 U.S. 374, 384 (2001) (holding that a defendant may not challenge a sentence in a 28 U.S.C. § 2255 proceeding by collaterally attacking the validity of an earlier conviction). Where "there was a denial of the right to counsel as guaranteed under the doctrine of [*Gideon*], allowing collateral attack on prior convictions is constitutionally required, but that where other claims are made (including ineffective assistance of counsel), there is no such constitutional right." *Clawson v. United States*, 52 F.3d 806, 808 (9th Cir. 1995).

Similarly, "a conviction cannot be collaterally attacked in a deportation proceeding." *Urbina-Mauricio v. I.N.S.*, 989 F.2d 1085, 1089 (9th Cir. 1993).

### 4. Application of Law

**Deportation Order** – Movant alleges in his Motion he did not receive the 2003 Notice of Intent/Decision to Reinstate. However, the copy provided by Respondent contains Movant's signature. (Exhibit A, Notice of Intent/Decision 7/29/2003.) Movant offers no reason to question the authenticity of this copy.

Movant's assertions of the lack of notice of his appellate and counsel rights appear to relate to his 2003 reinstatement proceedings. However, Movant makes no argument that he exhausted his administrative remedies with regard to his 2003 removal.

Further, Movant proffers no basis on which counsel should reasonably have concluded that his deportation order was fundamentally unfair, because he has not shown a "plausible" ground for relief from deportation.

His references to the validity of his California conviction (e.g. lack of advice as to the immigration consequences) are irrelevant to the validity of his 2003 removal order. That Order was simply a reinstatement of the 1999 removal order, and was not dependent upon the intervening California prosecution. The California prosecution may have triggered the immigration investigation, but it was not the basis for the removal.

Similarly, Movant's references to the 2014 Arizona conviction are irrelevant. While that prosecution may have triggered the subsequent immigration investigation and the instant prosecution, it was not the basis for either.

Accordingly, Movant has failed to show any plausible ground for relief from his prior deportation orders.

**Prior Convictions** – Movant makes no argument that he was denied counsel in his state convictions. At most, with regard to his California conviction, he argues counsel was ineffective. Accordingly, there was no basis for counsel in the instant case to challenge those convictions.

## 5. Conclusion

Movant proffers no plausible bases on which trial counsel could have challenged Movant's deportation orders, whether based on deficiencies in the immigration proceedings, or based on deficiencies in his related prior state convictions. According, Ground 3 is without merit and should be denied.

## D.  GROUND 4 – VALIDITY OF PLEA
### 1.  Parties Arguments

**Motion** - In Ground 4, Movant asserts his plea was not knowingly, intelligently, and voluntarily entered, based on "any and all supporting facts on this petitition [sic]." (Motion, Doc. 1 at "9.")

**Response** - Respondents argue that Movant's plea was knowing, intelligent and voluntary. Respondents point to the plea colloquy and sentencing hearing, and argue that Movant fails to show that counsel was ineffective in advising him on the plea. (Response, Doc. 16 at 7-10.)

**Reply** - In his Reply, Movant argues that his "plea was not knowing, intelligent or voluntary and Defense Counse[l] rendered ineffective assistance of counsel," again referencing his other claims.  (Reply, Doc. 20 at 4.)

## 2.  Applicable Law

The Supreme Court has held that where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. . . . [A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective]." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (internal quotation marks and citations omitted).

## 3.  Application of Law

Here, Movant was represented by counsel during the plea process.  Although Movant has asserted a variety of arguments that counsel was ineffective, none of them have merit.  Accordingly, Movant's plea was knowing, voluntary and intelligent.

Therefore, Ground 4 is without merit and should be denied.

## E.  SUMMARY

Movant's claims of ineffective assistance of counsel, and the underlying substantive claims in Grounds 1 through 3 are without merit.  Accordingly, the assertion of an involuntary plea under Ground 4 is without merit.  Accordingly, the Motion should be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255, and

challenges Movant's federal criminal judgment or sentence. The recommendations if accepted will result in Movant's Motion being resolved adversely to Movant. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion to Vacate, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed January 27, 2017 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of

Appealability be **DENIED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: January 31, 2018

17-0284r RR 18 01 24 on HC.docx

James F. Metcalf
United States Magistrate Judge

30